**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| REED TIMMER,<br><br>*Plaintiff*,<br><br>v.<br><br>SHAMROCK HILLS, LLC,<br><br>*Defendant*. | Case No. 25-2388-AJP |

**MEMORANDUM AND ORDER**

Plaintiff Reed Timmer filed suit against Defendant Shamrock Hills, LLC, asserting claims of direct copyright infringement in violation of 17 U.S.C. § 501 *et seq*. and vicarious copyright infringement. Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 32). For the reasons stated below, the Court grants Plaintiff's motion.

## I. Factual and Procedural Background[1]

Plaintiff is a meteorologist, professional videographer, and "storm chaser" who specializes in pursuing and documenting extreme weather phenomena to collect relevant scientific data to inform and educate the public about such phenomena. (Doc. 33 at 6). Plaintiff is the inventor of the "Dominator" vehicle, as well as the "Dominator Drone," which are machines "specially outfitted with

[1] The facts set forth are those uncontroverted by the parties unless otherwise cited.

meteorological sensors and armor plating, specifically designed and built to assist [Plaintiff] in documenting extreme weather phenomena and collecting relevant scientific data." (Doc. 33 at 6). Plaintiff documents extreme weather phenomena using video capture of on-scene recordings and drone footage.

On April 29, 2022, Plaintiff published a video of an EF3 tornado as it traversed Andover, Kansas, that he had taken via a drone ("the Video"). Plaintiff selected the "timing, lighting, angle, perspective, depth, lens, and equipment used to capture the recording," which recorded the tornado touching down and destroying part of the town. (Doc. 33 at 9). The Video was created for commercial purposes. Plaintiff registered the Video with the United States Copyright Office ("USCO") on June 3, 2022, under Registration No. PA 2-360-287.

Defendant is a Kansas limited liability company with its principal place of business in Overland Park, Kansas, and is a for-profit business entity. Defendant primarily installs roofs, but it also provides services such as "the installation and/or repair of gutters, building siding, and home exteriors." (Doc. 33 at 7). Defendant uses social media to assist it in generating revenue and to advertise its business services, including owning an Instagram account under the name "@shamrockroofers." (Doc. 33 at 8). Defendant has the legal right and ability to control and limit the activities on the account, derives financial benefit from its operation of the account, and instructs its staff to utilize videos in the content appearing on the account. At times, Defendant directs what appears on the account.

On June 4, 2022, a post containing an unaltered clip of Plaintiff's Video was posted on Defendant's Instagram account by Autumn Mitchell ("the Post"). Mitchell worked with SeeMeKC, a content creation company that handles website design, email marketing, and social media, as a third-party social media manager for Defendant. The purpose of the Post was to advertise Defendant's products and services.

Plaintiff never authorized Defendant to use the Video on its account, and Plaintiff never assigned any of his rights to the Video to Defendant. In September 2022, Plaintiff became aware that his Video was being displayed on Defendant's Instagram account. On February 23, 2023, Plaintiff sent Defendant a written letter regarding its unauthorized use of the Video.

On July 18, 2025, Plaintiff filed his initial Complaint with this Court. Plaintiff filed his First Amended Complaint on February 27, 2026. Defendant answered the First Amended Complaint on March 16, 2026. On June 19, 2026, Plaintiff filed the instant Motion for Partial Summary Judgment.[2]

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A party is thus entitled to summary judgment if the evidence points only one way and no reasonable

[2] This case was previously assigned to Judge Vratil but was reassigned to the undersigned in July.

inferences could support the non-moving party's position." *Genberg v. Porter*, 882 F.3d 1249, 1253 (10th Cir. 2018) (citing *Auraria Student Hous. at the Regency v. Campus Vill. Apartments*, 843 F.3d 1225, 1247 (10th Cir. 2016)). The court views the evidence and all reasonable inferences drawn therefrom "in the light most favorable to the nonmoving party." *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

Initially, the movant bears the burden to show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth "specific facts showing a genuine issue for trial." *James v. Wadas*, 724 F.3d 1312, 1319 (10th Cir. 2013). These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory opinions, allegations unsupported by specific facts, or speculation alone cannot survive a motion for summary judgment. *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

## III. Analysis

Plaintiff brings claims for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, for direct copyright infringement or, in the alternative, for vicarious copyright infringement. Plaintiff now seeks partial summary judgment as to the issue of liability of Defendant for copyright infringement. As explained below, because the Court finds that Plaintiff is entitled to summary judgment as to

Defendant's liability for direct copyright infringement, it will not address Plaintiff's alternative theory of liability. *See Grady v. Lambert*, 2015 WL 5697316, at *3 (D. Colo. Sept. 29, 2015) (stating that "having already succeeded on his claim of direct infringement, [the plaintiff] obtains nothing more by way of remedy from proving in the alternative that [the defendant] could also be liable for vicarious or contributory infringement").

To demonstrate a claim for direct copyright infringement, a plaintiff must show that: (1) it owns a valid copyright in the infringed work or works; and (2) the defendant copied protected elements from the work or works. *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009).

**A. Plaintiff owns a valid copyright to the Video.**

"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Plaintiff produced the certificate of registration for the Video which was made within five years after first publication of the Video. Defendant neither disputes the certificate nor disputes that Plaintiff holds a valid copyright to the Video. Therefore, Plaintiff demonstrates that he owns a valid copyright to the Video and satisfies the first element of a direct copyright infringement claim.

**B. Plaintiff demonstrates that Defendant copied protected elements from the Video.**

To demonstrate the second element of direct copyright infringement, Plaintiff must show that: (1) Defendant, as a factual matter, copied portions of Plaintiff's work; and (2) "that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *La Resolana Architects, PA*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)).

*1. Defendant copied portions of Plaintiff's work.*

To establish the first component, Defendant must have copied portions of Plaintiff's work. While direct evidence of copying is rarely available, Defendant does not contest that a copy of the Video was displayed on Defendant's Instagram Account. Defendant instead argues that there is a genuine issue of material fact as to whether Mitchell, the person who did the actual posting of the Video, was an agent of Defendant at the time of the posting.

"[A] principal is subject to liability for its agent's tortious conduct only if the conduct 'is within the scope of the agent's actual authority or ratified by the principal.'" *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) (quoting Restatement (Third) of Agency § 7.04 (2006)). "[A]n independent contractor can be an agent." *Id.* "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control,

and the agent manifests assent or otherwise consents so to act."[3] Restatement (Third) of Agency § 1.01 (2006). "An agent acts with actual authority if it 'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *1-800 Contacts*, 722 F.3d at 1251 (quoting Restatement (Third) of Agency § 2.01 (2006)).

In this case, Defendant has already admitted that it and/or its "agents, affiliates, employees, or licensees posted the Video to the Account." (Doc. 33-8 at 2). Defendant argues, however, that its admission does not mean it admitted that Autumn Mitchell was an agent of Defendant. Nevertheless, Defendant has committed itself to at least one of its agents, affiliates, employees, or licensees having posted portions of Plaintiff's work. *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). And it is uncontroverted that Mitchell is the one who did the act of posting the Video on Defendant's Instagram.

The next question, therefore, is whether Mitchell was an agent of Defendant. Mitchell clearly meets the definition of an agent of Defendant for posting content on Defendant's social media. It is uncontroverted that Mitchell was retained by Defendant "to perform services related to Defendant's social media." (Doc. 33 at 9). Defendant even refers to hiring Mitchell as a third-party social media manager, but it emphasizes that Mitchell was a "1099." (Doc. 36 at 8, 11). Mitchell communicated

---

[3] Because this case is governed by federal law which does not define "agent," the Court follows the Tenth Circuit and utilizes the common-law definition from the Restatement (Third) of Agency. *See Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1212 (10th Cir. 2022).

with Defendant on multiple occasions about the posts that she made on Defendant's account, but she did not discuss the Post in question. Defendant even gave Mitchell "'brand guidelines… text font, different color specifics, some images from our [Defendant's] internal sources.'" (Doc. 36 at 11 (quoting Doc. 33-9 at 26)).

Defendant argues that there is conflicting evidence as to whether Mitchell was an agent, but it produces no such conflicting evidence. Defendant's contention that Mitchell was an independent contractor or a "1099" cannot be conflicting evidence as it is well established that an independent contractor can be an agent. *1-800 Contacts*, 722 F.3d at 1251 (stating that "an independent contractor can be an agent. An agent need not be employee."). In the absence of conflicting evidence, and the uncontroverted evidence demonstrating that Mitchell was hired by Defendant to be a social media manager, there is no genuine issue of material fact as to whether Mitchell was an agent of Defendant.

The final question then is whether Mitchell acted with actual authority when she made the Post to Defendant's Instagram account.[4] It is uncontroverted that Mitchell was hired to be a social media manager for Defendant. It is further uncontroverted that "Defendant instructs its staff to utilize videos in the content appearing on the Account, and the use of videos increases the likelihood of user engagement." (Doc. 33 at 8). Thus, the Court finds that Mitchell's post, in which she posted to Defendant's Instagram account footage of a tornado (the Video), to

[4] The parties disagree as to whether Defendant gave approval for the Post in question. Because the Court finds that Mitchell acted with actual authority, the Court will not address whether Defendant ratified Mitchell's actions.

advertise the roofing company's services was done with actual authority by Defendant.

Defendant argues that its guidelines and feedback "did not contemplate that Ms. Mitchell would use a video posted by someone else." (Doc. 36 at 13). However, Defendant does not produce any guidelines or feedback as evidence in its response. In addition, Defendant previously claimed that it lacked any documents "relating to Defendant's policies[,] rules, guidelines, instructions, employee handbooks and/or procedures for posting content to the Account," or any documents "relating to Defendant's policies, rules, guidelines, procedures, employee handbooks and/or standards to determine what content is chosen for publication on the Account." (Doc. 37-4 at ¶13–14). Thus, Defendant fails to provide the Court with these alleged guidelines, and the Court cannot use unproduced evidence to create a genuine issue of material fact as to the scope of Mitchell's actual authority.

Finally, it is clear from the record that Mitchell sometimes posted on the Account without receiving prior approval from Defendant and that Defendant would sometimes provide feedback on her posts. (Doc. 33-9 at 24). Defendant argues that Mitchell's posting of the Video was "inconsistent with the nature of Ms. Mitchell's typical posts on Shamrock's behalf and with the type of posts that Shamrock approved for their account." (Doc. 36 at 13–14). Defendant, however, provides no evidence as to what a typical post contained or what Defendant usually approved for its account. Defendant, at best, argues that most, but not all, posts on the Account were original content created for Defendant. Plaintiff, however, argues and

produces uncontroverted evidence that Mitchell was tasked with providing social media advertisements for Defendant. Thus, the Court finds that Mitchell reasonably believed, in accordance with Defendant's manifestations that she was to advertise Defendant's roofing business on social media with videos, that she could create posts without prior approval, and that Defendant wished her to make advertisements, such as the Post in question. Therefore, Mitchell acted with actual authority from Defendant.

Having thus shown that a posting of the Video on Defendant's Instagram account occurred, and that the posting was done by Defendant's agent acting within the scope of her actual authority, the Court finds that it is undisputed that Defendant copied portions of Plaintiff's work.

*2. The copied elements of the work were protected expression and of such importance to the copied work that the appropriation is actionable.*

To establish the second component, "'a court must determine (1) which elements of the copyrighted work are protectable, and (2) whether these elements are substantially similar to the accused work.'" *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1101 (10th Cir. 2020) (quoting *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016)). "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression," including "motion pictures and other audiovisual works." 17 U.S.C. § 102(a)(6).

Here, Plaintiff holds a valid copyright to the Video. It is uncontroverted that Plaintiff "selected the timing, lighting, angle, perspective, depth, lens, and equipment used to capture the recording and filmed the tornado as it touched down

and began its path of destruction through the town." (Doc. 33 at 9). Thus, the Video is clearly an original work of authorship in the form of a motion picture or other audiovisual work. Therefore, the Video is protectable.

The next question is then whether the Video is substantially similar to the Post. It is uncontroverted that an unaltered clip from the Video was part of the Post. Defendant even states that "[t]he Post was 15 seconds long and consisted of a portion of a video originally posted on Plaintiff's TikTok account." (Doc. 36 at 8). Thus, the Post easily qualifies as substantially similar to the Video as it contains portions directly from the Video.

Therefore, Plaintiff demonstrates every element of liability for direct copyright infringement and is entitled to summary judgment on liability for that claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 32) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 18th day of November 2026.

ANTHONY J. POWELL
UNITED STATES DISTRICT JUDGE